John P. Aldrich, Esq.
Nevada Bar No. 6877
**ALDRICH LAW FIRM, LTD.**
7866 West Sahara Avenue
Las Vegas, NV 89117
Tel (702) 853-5490
Fax (702) 227-1975
jaldrich@johnaldrichlawfirm.com
*Attorneys for Plaintiff*

*[Additional counsel on signature page]*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| JAGDISH KOTHARI,<br><br>Plaintiff,<br><br>v.<br><br>CHINA XD PLASTICS COMPANY LIMITED, JIE HAN, TAYLOR ZHANG, LINYUAN ZHAI, HUIYI CHEN, and GUANBAO HUANG,<br><br>Defendants. | Civil Action No.:_____<br><br>**CLASS ACTION COMPLAINT FOR VIOLATION OF FEDERAL SECURITIES LAWS** |

Plaintiff Jagdish Kothari ("Plaintiff"), by his attorneys, alleges upon information and belief, except for his own acts, which are alleged on knowledge, as follows:

**NATURE AND SUMMARY OF THE ACTION**

1. Plaintiff, a stockholder of China XD Plastics Company Limited ("CXDC" or the "Company"), brings this action individually against the members of CXDC's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15.U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rules 14a-9, 17 C.F.R. 240.14a-9, 17 C.F.R. § 244.100, and 17 C.F.R. § 229.1015(b)(4), arising out of the proposed buyout of the Company by

its Chairman, Defendant Jie Han ("Han") through his affiliated companies, Faith Dawn Limited ("Parent") and Faith Horizon Inc. ("Merger Sub").

2. On June 15, 2020, the Company announced it had entered into an Agreement and Plan of Merger ("Merger Agreement"), by which Defendant Han, through his beneficially-owned companies Parent and Merger Sub, will acquire all of the 49.9% of outstanding shares of CXDC that he does not already beneficially own in an all-cash transaction in which CXDC's public stockholders will receive $1.20 in cash for each share of CXDC common stock (the "Proposed Transaction").

3. On June 22, 2020, CXDC filed a Preliminary Proxy Statement on a Schedule 14A with the SEC. The Proxy is materially deficient and misleading because, *inter alia*, it fails to disclose material information regarding (i) the financial projections for the Company, which were prepared by Company management and/or relied upon by Duff & Phelps, LLC ("Duff & Phelps"), the Company's financial advisor,  (ii) the financial analysis performed by Duff & Phelps to support its opinion on the fairness of the Proposed Transaction, and  (iii) the process undertaken by the special committee of the Board formed to evaluate Han's proposal (the "Special Committee").

4. Without additional information the Proxy is materially misleading in violation of federal securities laws.

5. By unanimously approving the Proposed Transaction and authorizing the issuance of the Proxy, the Individual Defendants participated in the solicitation even though they knew, or should have known, that the Proxy was materially false and/or misleading. The Proxy is an essential link in accomplishing, and receiving stockholder approval for, the Proposed Transaction.

6. For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from conducting the stockholder vote on the Proposed Transaction unless and until

the material information discussed below is disclosed to CXDC's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and Section 27 of the Exchange Act (15 U.S.C. § 78aa) because Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

8. Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

9. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) the conduct at issue had an effect in this District; (ii) CXDC is incorporated under the laws of this District; and (iii) Defendants have received substantial compensation as a result of incorporating in this District.

## PARTIES AND RELEVANT NON-PARTIES

10. Plaintiff is, and has been at all relevant times, the owner of shares of common stock of CXDC.

11. CXDC is organized and existing under the laws of the State of Nevada. It maintains principal place of business at No. 9 Dalian North Road, Haping Road Centralized Industrial Park, Harbin Development Zone, Heilongjiang Province, P.R. China. CXDC's common stock is listed on the NASDAQ under the ticker symbol "CXDC."

12. Defendant Jie Han is the Chairman of the Board and the Chief Executive Officer of the Company. Defendant Han beneficially owns 50.1% of the Company's common stock and

- 3 -

100% of the Company's preferred common stock, representing 69.6% of the Company's total voting power.

13. Defendant Taylor Zhang ("Zhang") has served as a director of the Company since May 14, 2009.

14. Defendant Linyuan Zhai ("Zhai") has served as a director of the Company since May 14, 2009.

15. Defendant Huiyi Chen ("Chen") has served as a director of the Company since January 2, 2020. Defendant Chen also served as the Chairman of the Special Committee.

16. Defendant Guanbao Huang ("Huang") has served as a director of the Company since January 2, 2020.

17. Defendants referenced in ¶¶ 12 through 16 are collectively referred to as the "Individual Defendants" or the "Board."

## FURTHER SUBSTANTIVE ALLEGATIONS

*Company Background and the Proposed Transaction*

18. CXDC develops, manufactures, and sells polymer composites for automobile and other applications. These composites are used in the exterior and interior trim and in the functional components of 31 automobile brands manufactured in China, including those of large American, Asian, and European automakers.

19. On June 15, 2020, CXDC issued a press release announcing the Proposed Transaction, reading in relevant part:

> China XD Plastics Company Limited (NASDAQ: CXDC) (the "Company"), one of China's leading specialty chemical companies engaged in the development, manufacture and sale of polymer composite materials primarily for automotive applications, today announced that it has entered into a definitive Agreement and Plan of Merger (the "Merger Agreement") with Faith Dawn Limited ("Parent") and Faith Horizon Inc. ("Merger Sub"), a Nevada corporation and a wholly-owned subsidiary of Parent.

- 4 -

Parent is ultimately wholly-owned by Mr. Jie Han (the "Chairman"), the chairman of board of directors and chief executive officer of the Company. The Chairman and XD. Engineering Plastics Company Limited, an entity wholly-owned by the Chairman (the "Chairman SPV", collectively with the Chairman, the "Rollover Stockholders") currently beneficially own 33,065,054 shares of common stock, par value $0.0001 per share, of the Company (the "Common Shares") and 1,000,000 shares of series B preferred stock, par value $0.0001 per share, of the Company (the "Preferred Shares"), representing approximately 70% of the voting power and approximately 50.1% of the share capital of the Company. Parent, Merger Sub and the Rollover Stockholders are collectively referred to as the "Buyer Group".

Pursuant to the Merger Agreement, Parent will acquire all of the outstanding Common Shares of the Company for a cash consideration equal to US$1.2 per share (the "Merger Consideration"). This amount represents a premium of 25% over the Company's closing price of US$0.96 per share as quoted by NASDAQ Global Market (the "NASDAQ") on May 7, 2020, the last trading day prior to the date that the Company received a non-binding "going private" proposal from members of the Buyer Group. The Merger Consideration also represents an increase of approximately 9.1% over the US$1.1 per share initially offered by the Buyer Group in their initial "going-private" proposal on May 7, 2020 and a premium of approximately 15.4% over the Company's closing price of US$1.04 per share on June 12, 2020, the last trading day prior to this press release.

Subject to the terms and conditions of the Merger Agreement, at the effective time of the merger, Merger Sub will merge with and into the Company, with the Company continuing as the surviving corporation and a wholly-owned subsidiary of Parent (the "Merger"), and each of the Common Shares issued and outstanding immediately prior to the effective time of the Merger will be cancelled and cease to exist in exchange for the right to receive the Merger Consideration of US$1.2 per share in cash, without interest and net of any applicable withholding tax, except for (i) Common Shares and Preferred Shares held by any of Parent, Merger Sub, the Rollover Stockholders and any of their respective affiliates; (ii) Common Shares held by the Company or any its wholly owned subsidiary (or held in the Company's treasury), and (iii) Common Shares reserved (but not yet allocated) for issuance, settlement and allocation upon exercise or vesting of the Company share awards. Pursuant to Nevada Revised Statutes 92A.390(1), there are no rights of dissent available to the holders of Common Shares in connection with the Merger.

The Company's board of directors, acting on the recommendation of a special committee of independent and disinterested directors (the "Special Committee"), unanimously approved the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, and resolved to recommend that the Company's stockholders vote to authorize and approve the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger. The Special Committee, which is composed solely of independent directors of the Company who are unaffiliated with any member of the Buyer Group or management of the Company, exclusively negotiated the terms of the

Merger Agreement with the Buyer Group with the assistance of its independent financial and legal advisors.

The Merger, which is currently expected to close during the third quarter of 2020, is subject to various closing conditions, including the adoption of the Merger Agreement by the Company's stockholders. Pursuant to the Merger Agreement, adoption of the Merger Agreement and the transactions contemplated by the Merger Agreement, including the Merger, by the Company's stockholders requires (i) the affirmative vote (in person or by proxy) of the holders of at least a majority of the voting power of the outstanding Common Shares and Preferred Shares, voting together as a single class, with the holders of Preferred Shares being entitled to an aggregate of 40% of the combined voting power of the entire share capital of the Company, and (ii) the affirmative vote (in person or by proxy) or consent of the holders of at least a majority of the outstanding Preferred Shares, voting as a single class. The Company will call a meeting of stockholders for the purpose of voting on the adoption of the Merger Agreement and the transactions contemplated by the Merger Agreement as soon as practicable. If completed, the Merger will, under laws of the State of Nevada, result in the Company becoming a privately-held company and the Common Shares of the Company would no longer be listed on the NASDAQ.

Hogan Lovells is serving as U.S. legal counsel to the Special Committee, Duff & Phelps, LLC is serving as the financial advisor to the Special Committee. Wilson Sonsini Goodrich& Rosati, Professional Corporation is serving as U.S. legal counsel to the Company.

O'Melveny & Myers LLP is serving as legal advisor to the Buyer Group.

***The Background of the Merger Agreement***

20.     Defendant Han initially proposed purchasing the public shares of the Company in February 2017 with an affiliate of Morgan Stanley Private Equity Asia III, Inc. However, on October 14, 2019, Morgan Stanley withdrew from the consortium and informed the Board that it would not participate in a transaction.

21.     On May 8, 2020, Defendant Han delivered to the Board a preliminary buyout proposal to purchase the remaining shares of the Company that he did not own for $1.10 in cash per share.

22.     That same day, the Company issued a press release acknowledging receipt of the proposal.

23. On May 10, 2020, the Board met to discuss the proposal. The Board then determined to create the Special Committee, appointing Defendant Zhai, Chen, and Huang, to evaluate the proposal and negotiate with Defendant Han on behalf of the unaffiliated stockholders of the Company.

24. Later that day, the Special Committee held its first meeting. After discussion, it agreed to a set of

> draft communications and confidentiality guidelines prepared by [its counsel] Hogan Lovells for directors, officers and employees of the Company to follow in light of and in connection with the Proposed Transaction and any alternative transaction, including guidelines on what information can and should be provided to the Buyer Group and to third parties involved in or potentially interested in pursuing an alternative transaction, and the circumstances and conditions under which such information should be provided.

25. These guidelines were then provided to Company management on May 14, 2020.

26. The Special Committee also agreed to engage Duff & Phelps at the same meeting, announcing this decision on May 15, 2020.

27. The Special Committee met again on May 18, 2020 to discuss the due diligence necessary from Duff & Phelps to conduct a valuation of the Company.

28. The next day, the Company "made available to the Special Committee emails sent from a number of individual stockholders who are minority stockholders of the Company, claiming that the offer price of $1.10 is too low."

29. On May 21, 2020, Defendant Han confirmed to Duff & Phelps that he would not consider selling his shares or participating in an alternative transaction, foreclosing any option available to the Special Committee apart from a yes or no on the proposal.

30. On May 25, 2020, the Special Committee met again. After discussion, they concluded not to conduct a market check or solicit interest from any other company, but to instead seek a majority of the minority vote provision from Defendant Han. This would have

required that a majority of the Company's stockholders other than Defendant Han to vote in favor of the proposal.

31.   Throughout the process, however, Defendant Han rejected this majority of the minority option.

32.   After claiming that he would not increase the offer on June 11, 2020, Defendant Han ultimately increased the offer to $1.20 per share on June 12, 2020 "[i]n order to expedite the process and deliver greater value to unaffiliated security holders."

33.   After attorneys for both sides exchanged drafts of the Merger Agreement and its supporting documents, the Special Committee met on June 15, 2020. During this meeting, the Special Committee heard an oral presentation on the fairness of the Proposed Transaction from Duff & Phelps. After further discussion, the Special Committee agreed to the Proposed Transaction and recommended it to the Board.

34.   Following this meeting, the Board approved the Proposed Transaction, and it was announced by press release later that day.

***The Materially Misleading and Incomplete Proxy***

35.   Defendants have failed to provide stockholders with material information necessary for an informed vote on the Proposed Transaction.  The Proxy, which recommends that the Company's stockholders vote in favor of the Proposed Transaction, misrepresents and/or omits material information in violation of Sections 14(a) and 20(a) of the Exchange Act.

***Misleading Statements and Omissions Regarding Financial Projections***

36.   The Proxy fails to provide material information concerning the Company's financial projections.

37.   The Proxy discloses financial projections that Company management provided to the Board, the Special Committee, and Duff & Phelps during the process leading up to the execution of the Merger Agreement.  These disclosed projections provide forecasts of various

financial metrics for the Company for the years 2020 through 2025, including EBITDA and Net Income. But Duff & Phelps' most prominent analysis, a *Discounted Cash Flow Analysis*, used undisclosed projections of "the estimated future unlevered free cash flows attributable to the Company for the fiscal years ending December 31, 2020 through December 31, 2025." The Proxy entirely omits these projected unlevered free cash flows, materially misleading CXDC stockholders regarding the actual assumptions of Duff & Phelps and the financial future of the Company.

38. Furthermore, the failure to disclose these projections is an omission of the most important input into Duff & Phelps' analysis, the actual unlevered free cash flows. While the summary of its analysis discloses the assumed weighted average cost of capital, and terminal rate of growth, it's impossible to understand the discounted cash flow analysis without a view into the actual cash flows discounted to determine the range of fair values of the Company. As such, CXDC stockholders are misled into believing that there would be no point in exercising their dissension rights and seeking the fair value of their shares under Nevada law.

39. Without these disclosures, the Company has cherry-picked the disclosed projections and materially misled CXDC stockholders, rendering the financial analyses of Duff & Phelps misleading, or at best, meaningless.

***Misleading Statements and Omissions Regarding the Process Undertaken by the Special Committee***

40. During the negotiation of the Merger Agreement, the Special Committee received and reviewed the letters from "a number of individual stockholders who are minority stockholders of the Company, claiming that the offer price of $1.10 is too low."

41. While the final negotiated price was above $1.10 per share, the Proxy fails to disclose whether these stockholder letters contained a range of valuations for the Company and whether $1.20 is above or below that range. Without further disclosure, the Proxy implies that

$1.20 was somehow adequate and acceptable, while $1.10 was too low. This implication by omission is materially misleading.

42. The Proxy also fails to disclose the price term of the counterproposal submitted by the Special Committee on June 4, 2020.

43. The Proxy fails to disclose the basis for the recommendation of the Board in favor of the Proposed Transaction when the Proposed Transaction will be primarily funded with the Company's available cash on hand.

44. Defendants' failure to provide CXDC's stockholders with the foregoing material information constitutes a violation of Sections 14(a) and 20(a) of the Exchange Act, and Rule 14a-9 promulgated thereunder. The Individual Defendants were aware of their duty to disclose this information. The material information described above that was omitted from the Proxy takes on actual significance in the minds of CXDC's stockholders in reaching their decision whether to vote in favor of the Proposed Transaction. Absent disclosure of this material information prior to the vote on the Proposed Transaction, Plaintiff and the other members of the Class will be unable to make an informed decision about whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm for which damages are not an adequate remedy.

## CLAIMS FOR RELIEF

### COUNT I

**Against All Defendants for Violations of Section 14(a) of the Exchange Act
and Rule 14a-9 Promulgated Thereunder**

45. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46. Defendants have issued the Proxy with the intention of soliciting stockholder support for the Proposed Transaction.

47.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that a proxy statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

48.     Specifically, the Proxy violates Section 14(a) and Rule 14a-9 because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants should have known that the Proxy is materially misleading and omitted material facts that are necessary to render the statements that are made non-misleading.

49.     The Individual Defendants had actual knowledge of the misrepresentations and omissions of material facts set forth herein, or acted with reckless disregard for the truth.

50.     The misrepresentations and omissions in the Proxy are material to Plaintiff and the Class, and Plaintiff and the Class will be deprived of their right to cast a fully informed vote on the Proposed Transaction.

51.     Plaintiff and the Class have no adequate remedy at law.

## COUNT II

**Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

52.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

53.     The Individual Defendants acted as controlling persons of CXDC within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as officers and/or directors of CXDC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy filed with the SEC, they had the power to influence and control and did influence and

control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

54. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The Proxy at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Proxy.

56. In addition, as the Proxy sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Proxy purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

57. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

58. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons,

these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

59. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## **RELIEF REQUESTED**

**WHEREFORE**, Plaintiff demands judgment against defendants jointly and severally, as follows:

(A) declaring this action to be a class action and certifying Plaintiff as the Class representatives and his counsel as Class counsel;

(B) declaring that the Proxy is materially misleading and contains omissions of material fact in violation of Section 14(a) of the Exchange Act and Rule 14a-9 promulgated thereunder;

(C) preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy;

(D) to the extent the Proposed Transaction is consummated prior to the Court's entry of a final judgment, awarding Plaintiff and the members of the Class rescissory damages against the Individual Defendants, including, but not limited to, pre-judgment and post-judgment interest;

(E) awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses;

(F) awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, and any appropriate state law remedies; and

(G) granting Plaintiff and the other members of the Class such further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: July 17, 2020

**ALDRICH LAW FIRM, LTD.**

By: /s/ John P. Aldrich
John P. Aldrich, Esq.
7866 West Sahara Avenue
Las Vegas, Nevada 89117
702.853.5490 Telephone
702.227.1975 Fax

*Attorneys for Plaintiff*

**OF COUNSEL:**

**LEVI & KORSINSKY LLP**
Donald J. Enright

1101 30th Street, N.W.
Suite 115
Washington, DC 20007
(202) 524-4290